### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

\*\*\*

STEVEN HAIGH,

               Plaintiff,

vs.

CONSTRUCTION INDUSTRY & LABORERS
JOINT PENSION TRUST FOR SOUTHERN
NEVADA, PLAN A & PLAN B,

               Defendant.

Case No. 2:14–cv–1545–JAD–VCF

**ORDER**

**MOTION TO COMPEL (#19)**
**MOTION TO EXTEND TIME (#20)**
**MOTION TO STRIKE (#29)**

      This matter involves Steven Haigh's civil action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1), (3), (d)(2), for the wrongful suspension of Haigh's pension benefits. *See* (Compl. (#1) ¶¶ 3, 21).[1] Before the court are Haigh's Motion to Compel (#19) and Motion to Extend Time (#20) and Defendant's Motion to Strike (#29). For the reasons stated below, the parties' motions are denied.

### BACKGROUND

      In February of 1989, Steven Haigh was 18 years-old. (Compl. (#1) at ¶ 7).  He joined a union, enrolled in a pension plan, and began his first job. (*Id*. at ¶¶ 7–8). He worked on union projects for the next 18 years. (*Id*. at ¶ 9).

      Haigh retired from the union in October 2007 and submitted an application to receive pension benefits. (*Id*. at ¶¶ 10, 12–13). Under the terms of the union's pension plan, retirees are required to "refrain from the employment for wages or profit in the type of work included in the Collective Bargaining

---

[1] Parenthetical citations refer to the court's docket.

Agreement" if the retiree wants to receive pension benefits. *See* (id. at ¶ 15); (Pl.'s Mot. to Compel (#19) at 11 ¶ 19) (citing Ex. 6). The plan gave Haigh's employer the "sole and absolute discretion" to interpret and apply the plan and determine whether a plan beneficiary failed to refrain from prohibited work. *See* (Plan Rules (#24-1) at §§ (G)(3)(b), (H)).

Haigh's application to receive pension benefits was accepted and he started collecting monthly pension benefits in October 2007. (Compl. (#1) at ¶¶ 12–13). Around the same time, Haigh obtained a concrete contractor's license, formed A&J Concrete, and began working for Tutor-Perini Building Company as a concrete superintendent. (Compl. (#1) at ¶¶ 12–13). Tutor-Perini Building Company is widely known as a union contractor. (*Id*. at ¶ 13).

In March of 2012, Haigh left the Tutor-Perini Building Company and began working full-time for his own company, A&J Concrete. (*Id*. ¶ 14). A&J Concrete is not a union contractor. (*Id*.)

On April 9, 2014, Haigh received a letter from the pension's counsel, advising him that his pension benefits had been suspended because Haigh had not refrained from the type of employment encompassed by the Collective Bargaining Agreement. (*Id*. at ¶ 15).

Haigh timely appealed the decision to suspend his benefits. (*Id*. ¶ 21). And on June 27, 2014, an administrative body informed Haigh that the decision to suspend his benefits had been upheld. (*Id*.)

On September 22, 2014, Haigh commenced this action against the Construction Industry & Laborers Joint Pension Trust for Southern Nevada, Plan A & Plan B (hereinafter: "pension" or "Defendants"). He alleges that the pension's trustees arbitrarily and capriciously suspended his benefits because Haigh's positions as a supervisor at the Tutor-Perini Building Company and owner of A&J Concrete do not qualify as prohibited employment under the pension plan. (*Id*. at ¶¶ 19, 23–24).). The complaint also notes that Defendant's decision to suspend his benefits was designed to harass him for operating A&J Concrete, a non-union contractor. (*Id*. at ¶ 24, n. 2).

2

On October 23, 2014, the pension answered and counterclaimed, seeking, *inter alia*, the disgorgement of all pension benefits paid to Haigh from October 1, 2007 through April 9, 2014, which totals $239,761.00. (Am. Answer (#8) at ¶ 23).

In early 2015, Haigh served written discovery requests on the pension and notified it that he wishes to take the depositions of individuals who were involved in the decision to suspend his benefits. Defendant answered Haigh's written discovery requests and allegedly refused to sit for a deposition. This prompted the instant Motion to Compel.

Haigh contends that the answers to written discovery are insufficient and Defendant should be compelled to sit for a deposition because the pension violated its fiduciary duties and the administrative process suffered from a procedural conflict of interest. *See* (Mot. to Compel (#19) at 7:22–24, 21:5). Because discovery closed on April 21, 2015, Haigh also moved to extend discovery the discovery cutoff date. *See* (Disc. Plan (#15) at ¶ 3); (Mot. to Extend (#20) at 23–33).

In response, the pension contends that (1) Haigh's discovery requests are not reasonably calculated to lead to the discovery of admissible evidence because this court's review is limited to the administrative record, *see* (Def.'s Opp'n (#24) at 7), and (2) Haigh's reply brief should be stricken because it presents new arguments. *See* (Mot. to Strike (#29) at 2:10–12). This order follows.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope. In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). This rule provides for "[l]iberal discovery," *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), and serves "the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). Indeed, it permits parties to "fish" for evidence, provided that they cast a "reasonably calculated" lure. FED. R. CIV. P. 26(b), Advisory Comm.

Notes (1946) ("[T]he Rules . . . permit 'fishing' for evidence as they should.") (citation omitted); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Discovery, however, has limits. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rules 26(b)(2) and 26(c)(1), which govern discovery's limits. In pertinent part, Rule 26(b)(2) states that the court "must" limit the frequency and extent of discovery if the discovery sought is "unreasonably cumulative or duplicative," can be "obtained from some other source that is more convenient, less burdensome, or less expensive," is untimely, or if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case." FED. R. CIV. P. 26(b)(2)(C).

If, as here, a party resists discovery, the requesting party may file a motion to compel. *See* FED. R. CIV. P. 37(a)(1). A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). Second, the motion must include a threshold showing that the information in controversy is relevant and discoverable under Rule 26. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

If the requesting party makes these showings, the resisting party carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must specifically detail the reasons why each request is improper. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992) ("Broad allegations of harm,

4

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citation omitted) ("To justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'").

## DISCUSSION

The parties' filings present one question: whether Haigh's written discovery requests and proposed depositions are relevant to "any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1). If Haigh's discovery requests are relevant, then discovery should be compelled and the discovery cutoff date extended. If Haigh's discovery requests are not relevant, then Haigh's motions must be denied. The court, therefore, begins its analysis of Haigh's Motion to Compel by reviewing the nature of his claim for relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1), (3), (d)(2).

## I.    The Statutory Scheme & Claims for Relief

The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), "established a comprehensive and nationally uniform system of rules and standards governing, among other things, the conduct of fiduciaries in the administration of employee benefit plans." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1498 (9th Cir. 1984). It is designed to "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990).

ERISA authorizes a plan beneficiary to commence a civil action (1) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," *see* 29 U.S.C. § 1132(a)(1)(B); or (2) "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or

the terms of the plan," *see* 29 U.S.C. § 1132(a)(3). A prevailing plan beneficiary may be awarded a money judgment "enforceable against the plan as an entity." 29 U.S.C. § 1132(d).

Although these provisions authorize a plan beneficiary to commence a civil action, they do not define the nature and scope of the plan beneficiary's claim for relief. The nature and scope of a plan beneficiary's claim for relief depends on the complaint's underlying facts and allegations. FED. R. CIV. P. 8(a)(2)–(3); *Conkright v. Frommert*, 559 U.S. 506, 512 (2010). Employee benefit plans are trust instruments and the proper standard of review of a trustee's decision depends on (1) the language of the instrument and (2) whether the plan administrator properly exercised his or her fiduciary duties when deciding to award, deny, or suspend benefits. *Conkright*, 559 U.S. at 512 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–12 (1989)) (discussing the language of the trust instrument); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111–117 (2008) (discussing fiduciary duty). Taking these variables into account, courts have identified at least four types of ERISA claims that are relevant here.

First, if the plan does not give the trustee, employer or plan administrator discretionary authority to determine whether an employee is eligible to receive benefits, then the court reviews the beneficiary's claim for the wrongful suspension of benefits as it would a contract claim: by taking a *de novo* look at the terms of the plan. *See Firestone*, 489 U.S. at 112–13 (citations omitted); *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1024 (9th Cir. 2008). When making a *de novo* determination, the question before the court is whether the beneficiary is entitled to benefits under the plan. Here, the court may consider evidence outside of the administrative record. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006).

Second, if the plan gives the trustee, employer or plan administrator discretionary authority to determine whether an employee is eligible to receive benefits, then the court reviews the beneficiary's claim for the wrongful suspension of benefits for an abuse of discretion. *Firestone*, 489 U.S. at 115; *Pitney*

*Bowes*, 544 F.3d at 1024. Under this standard, the question before the court is whether the plan administrator acted arbitrarily and capriciously when denying the beneficiary benefits and adjudicating the administrative appeal. Here, the court's review is limited to the administrative record. *Alta Health*, 458 F.3d at 969.[2] "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992).

Third, if the plan gives the trustee, employer or plan administrator discretionary authority to determine whether an employee is eligible to receive benefits—and the plan suffered from a structural conflict of interest[3] or the decision to deny benefits suffered a procedural conflict of interest[4]—then the court reviews the beneficiary's claim for the wrongful suspension of benefits under a less deferential abuse-of-discretion standard. *Glenn*, 554 U.S. at 111, 117. Here, the court's review is limited to the administrative record and limited discovery regarding the alleged conflict of interest, which is merely a factor to be considered in determining whether there was an abuse of discretion. *Id.*; *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d 1120, 1129 (D. Nev. 2003); *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010).

Fourth, if the plan gives the trustee, employer or plan administrator discretionary authority to determine whether an employee is eligible to receive benefits—but the plan administrator utterly fails to

---

[2] An administrative record consists of what the beneficiary or employee presented to the trustee, employer or plan administrator when appealing the decision to suspend the beneficiary's benefits. *See Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 904 (9th Cir. 2004) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993)).

[3] A structural conflict of interest exists where an employer both funds a retirement plan and determines whether an employee is eligible to receive benefits from the plan. *Glenn*, 554 U.S. at 111.

[4] A procedural conflict of interest exists where procedural irregularities prevent the employee from receiving a fair hearing. *See, e.g.*, *Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 (3d Cir. 2007) (overruled on other grounds).

exercise discretion or "engages in wholesale and flagrant violations" of ERISA's procedural requirements —then the court reviews the beneficiary's claim for the wrongful suspension of benefits *de novo*. *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 972 (9th Cir. 2006). Here, the court may consider evidence outside of the administrative record. *See Alta Health*, 458 F.3d at 969 (discussing the *de novo* standard). However, these are "rare" cases. *Id*.

These rules underpin the observation by the Honorable Peggy A. Leen, U.S. Magistrate Judge for the District of Nevada, that "[t]he scope of discovery in a denial of ERISA benefits case in linked to the standard of review." *Medford*, 244 F. Supp. 2d at 1126 (citations omitted).

## II.   <u>Whether Haigh's Discovery Requests are Relevant to his Claim for Relief</u>

The parties' dispute requires the court to determine what type of claim Haigh's complaint pled and whether his discovery requests seek information that is relevant to that claim. The parties agree that the language of Haigh's benefit plan gave the employer the "sole and absolute discretion" to interpret and apply the plan and determine whether a plan beneficiary failed to refrain from prohibited work. *See* (Plan Rules (#24-1) at §§ (G)(3)(b), (H)). They disagree, however, on the applicable standard of review and, by extension, the scope of discoverable information relevant to Haigh's claim for relief.

The court's analysis begins and ends with Haigh's complaint. He alleges that "[t]he trustees of the Pension Trust [acted] arbitrarily and capriciously" when denying his claim for benefits because Haigh's positions as a supervisor at the Tutor-Perini Building Company and owner of A&J Concrete do not qualify as prohibited employment under the pension plan. (Compl. (#1) at ¶¶ 19, 23–24). The complaint also states in a footnote that Defendant's decision to suspend Haigh's benefits was designed to harass Haigh for operating A&J Concrete, a non-union contractor. (*Id*. at ¶ 24, n. 2). The complaint does not plead any facts in support of this allegation, allege that this harassment constitutes a breach of fiduciary duty, or allege that the administrative process experienced a conflict of interest. *See generally* (Compl. (#1) at ¶¶ 1–24).

These allegations demonstrate that Haigh's complaint states a claim that falls into the second category of ERISA claims identified above. Haigh's pension plan gave Defendant discretionary authority to determine whether an employee is eligible to receive benefits, *see* (Plan Rules (#24-1) at §§ (G)(3)(b), (H)), and his complaint alleges that Defendant's decision regarding his eligibility to receive benefits was arbitrary and capricious. *See* (Compl. (#1) at ¶¶ 19, 23–24). This claim limits the court's review to the administrative record. *See Alta Health*, 458 F.3d at 969.

Nonetheless, Haigh's Motion to Compel argues that he "pursues a *de novo* review of the Pension Trust's action because his suspension is in 'that rare class of cases' . . . where the Pension Trust acted 'in utter disregard of the purpose of the Plan' and in complete derogation of its fiduciary duties." (Doc. #19 at 7:22 –25). The court disagrees. Haigh's complaint contains no allegations regarding a breach of fiduciary duty, a conflict of interest, or wholesale and flagrant violations of ERISA. *See generally* (Compl. (#1) at ¶¶ 1–24). Rather, Haigh pleads that Defendant "wrongly expanded to definitions of 'prohibited employment'" and, therefore, acted "arbitrarily and capriciously" when deciding to suspend his benefits. (*Id*. at ¶¶ 23–24). These allegations plead Haigh out of discovery. *See Alta Health*, 458 F.3d at 969.

Rule 26(b)(1) permits a party to obtain discovery that is relevant to "any party's claim or defense."[5] If a complaint states a claim, then a party may engage in liberal discovery and "fish" for evidence to support that claim. *See Rhinehart*, 467 U.S. at 34; *Hickman*, 329 U.S. at 507. However, Rule 26(b)(1) does not authorize what Haigh seeks: to fish for evidence to support new claims that are not contained in the complaint. This would frustrate the fundamental goals of Rule 8 and Rule 26, which exist to provide a

---

[5]  A claim consists of (1) an assertion of a right to relief in a pleading that is (2) supported by factual allegations. *See* FED. R. CIV. P. 7(a), 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); BLACK'S LAW DICTIONARY 264 (8th ed. 2004) (defining "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court"). As discussed above, Haigh's complaint contains neither element with regard to his assertion that Defendant acted in utter disregard of the purpose of the Plan and in complete derogation of its fiduciary duties.

defendant with "fair notice" of the claims against it and "avoid surprise at trial."[6] *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (discussing Rule 8); 8A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2054 (3d ed.) (discussing Rule 26).

When determining the proper scope of discovery in an ERISA action, courts consider—as they must—the complaint's allegations. *See, e.g.*, *Medford*, 244 F. Supp. 2d at 1127. If a plaintiff seeks limited discovery to support a claim for breach of fiduciary duty or conflict of interest, then the complaint must state a claim for breach of fiduciary duty or conflict of interest. *See id.* (Leen, M.J.) (permitting limited discovery regarding a conflict of interest where the complaint contained a claim for breach of fiduciary duty under 29 U.S.C. § 1133); *see also Chamblin v. Reliance Standard Life Ins. Co.*, 168 F. Supp. 2d 1168, 1172 (N.D. Cal. 2001) (dismissing a claim for breach of fiduciary duty pled under 29 U.S.C. § 1104(a)).

Haigh disregards these tenets and asks the court to compel discovery for a claim that has not been asserted in the complaint. *See* (Mot. to Compel (#19) at 7:22–24, 21:5). The court, therefore, finds that Haigh's discovery requests are not reasonably calculated to lead to the discovery of admissible evidence because his complaint limits the court's review to the administrative record. The court further finds that Haigh's Motion to Extend Time (#20) is moot because Haigh's claim does not permit a plaintiff to conduct discovery. *See Alta Health*, 458 F.3d at 969; *Aetna Life & Cas. Ins. Co.*, 967 F.2d at 381. The court also finds that Haigh's reply improperly presented facts and arguments that were not raised in the underlying Motion to Compel. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not

---

[6] Surprise appears to have been attempted here. On February 26, 2015, Defendant moved for summary judgment based on the administrative record. *See* (Doc. #18). On March 19, 2015, Haigh moved to compel to seek limited discovery beyond the administrative record in connection with allegations that were not pled in the complaint. *See* (Doc. #19).

consider arguments raised for the first time in a reply brief."). The court did not consider those facts and arguments when considering Haigh's Motion to Compel.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Haigh's Motion to Compel (#19) is DENIED.

IT IS FURTHER ORDERED that Haigh's Motion to Extend Time (#20) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (#29) is DENIED; however the court did not consider the facts and arguments Haigh raised for the first time in his reply brief.

IT IS SO ORDERED.

DATED this 24th day of April, 2015.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE