UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Steven Haigh, <br><br> Plaintiff <br><br> v. <br><br> Construction Industry and Laborers Joint Pension Trust for Southern Nevada, Plan A and Plan B, <br><br> Defendant | Case No. 2:14-cv-1545-JAD-VCF <br><br> **Order Granting Leave to Amend** <br> **[##18, 33]** |

    Steven Haigh started working for the Laborers' International Union of North America when he was 18-years-old and, after putting in 18 years, he left with a union pension and moved to other employers.[1] He formed A&J Concrete the month he stopped working with the union,[2] and describes his company as a non-union contractor "repeatedly threatened, harassed[,] and picketed by the Union."[3] In April 2014, the month after Haigh began at A&J, the union suspended his pension benefits.[4]

    Haigh sues the Construction Industry & Laborers Joint Pension Trust for Southern Nevada, Plan A & Plan B (Pension Trust) to reinstate his pension benefits.[5] Haigh sought discovery beyond the scope of his complaint, and Magistrate Judge Cam Ferenbach denied that discovery on April 24, 2015. Haigh promptly sought leave to amend both his complaint and the scheduling order on April 30, 2015.[6] The proposed complaint would add Pension Trust chairman Thomas White as a

---

[1] *See* Doc. 1 at 2.

[2] *Id.*

[3] *See id.*

[4] *See id.*

[5] *Id.* at 1, 4.

[6] Doc. 19 (motion to compel); Doc. 31 at 8–10 (Judge Ferenbach's order denying discovery requests); Docs. 32–33 (motion to amend complaint and scheduling order).

1

defendant and asserts new claims against White and the Trust.[7] Magistrate Judge Ferenbach granted leave to amend the scheduling order.[8] After reviewing the record and law, I grant Haigh's motion to amend his complaint and deny the Pension Trust's pending summary-judgment[9] motion without prejudice to its reassertion based on the amended complaint.

## Discussion

After the amendment deadline passes, a plaintiff seeking amendment must move to reopen the filing period. When a party seeks amendment after the scheduling-order deadline expires, he must satisfy the good-cause standard in Federal Rule of Civil Procedure 16(b)(4).[10] Good cause "primarily considers the diligence of the party seeking the amendment."[11] Courts may also consider prejudice to the opposing party, but the focus is on what reasons the moving party has for modifying the scheduling order.[12] In addition, the plaintiff must satisfy Rule 15(a)(2), which governs leave to amend more than 21 days after service of the complaint. Justice requires courts to "freely" grant leave to amend a complaint in the absence of undue delay, bad faith or dilatory motives, failure to cure problems with the complaint despite repeated opportunities to amend, undue prejudice to the opposing party, or futility.[13]

**A.  Rule 16: Amendment after the Scheduling-Order Deadline Passes**

I can readily find that Haigh was diligent in satisfying Rule 16. Haigh moved for leave to amend his complaint five court days after Magistrate Judge Ferenbach issued the order explaining

---

[7] Doc. 33-1 at 28–1.

[8] Doc. 37.

[9] Doc. 18.

[10] *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

[11] *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

[12] *Id.*

[13] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

why Haigh's discovery requests were beyond the scope of his complaint.[14] In granting leave to amend the court's scheduling order, Judge Ferenbach found that Haigh "was diligent in seeking a modification" and that the interests of justice required allowing a scheduling-order amendment.[15] I also find that Haigh was diligent in seeking amendment and that Rule 16's good-cause standard is thus satisfied.

**B.    Rule 15: Amendment More than 21 Days after the Complaint Is Filed**

*1. Timeliness and good faith*

Next, I consider Haigh's motion under the Rule 15 standard. Because Haigh was diligent, I also find under Rule 15 that he did not display undue delay, dilatory motive, or bad faith. He sought amendment within a week of receiving Judge Ferenbach's order, and it is still fairly early in the timeline of this suit, which was pending only seven months before Haigh moved to amend. In addition, because this is Haigh's first motion to amend, he has not repeatedly failed to correct deficiencies.

Because I recognize that the Pension Trust filed a motion for summary judgment two months before Haigh moved to amend, I take particular care in examining Haigh's timeliness.[16] In this case, the defendant chose to skip a motion to dismiss and went straight to a motion for summary judgment. This is entirely within its prerogative. At the same time, this means that the Pension Trust's motion for summary judgment came only five months after the complaint was filed. This is earlier than most summary-judgment motions are filed and means it still came early in the litigation.

Accordingly, I do not find undue delay, dilatory motive, or bad faith on Haigh's part.

*2. Good cause*

The Pension Trust argues that there is not good cause to amend because "Haigh alluded to similar issues" in his administrative appeal and original complaint, when he alleged that the Trust

---

[14] *See* Docs. 31–33.

[15] Doc. 37 at 3.

[16] *See* Docs. 18, 32–33.

3

failed "to enforce the 2001 Plan consistently with respect to similarly situated retirees" and that he received "uneven and disparate treatment."[17] But these generalized disparate-treatment allegations are distinguishable from the detailed allegations, now raised in the proposed complaint, that the Pension Trust's chair personally suspended Haigh's benefits on learning that Haigh owned A&J Concrete.[18] I am therefore unpersuaded that Haigh lacks good cause to amend on this basis.

### 3. Futility: the record

The Pension Trust also urges that amendment would be futile because judicial review is limited to the administrative record.[19] Generally, ERISA appeals are limited to the record before the administrator. "[T]he district court should exercise its discretion to consider evidence outside of the administrative record only when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision."[20] The Ninth Circuit provides this non-exhaustive list of circumstances when it "could be considered necessary" for ERISA plaintiffs to introduce evidence beyond the administrative record:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.[21]

Because Haigh seeks to plead that White was the Pension Trust's chair, White announced that he

---

[17] Doc. 34 at 4.

[18] *Compare id.* (opposition brief) *with* Doc. 33-1 at 4 (proposed amended complaint).

[19] Doc. 34 at 9; *see also* Doc. 33-1 at 2.

[20] *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995)) (internal quotation marks omitted) (emphases in original).

[21] *Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)).

would suspend Haigh's pension immediately upon learning that Haigh owned the non-union A&J Concrete, and White promptly walked across the hall to put that announcement into effect,[22] Haigh's proposed additional evidence raises serious impartiality concerns. If Haigh cannot raise these issues now and is bound to the administrative record, the reason for his benefits suspension may be completely buried, and I may be unable to conduct a full de novo examination of the appropriateness of the administrator's decision regarding Haigh. Based on the impartiality concerns that White's alleged conduct raises, I find that the circumstances of this case may justify going beyond the administrative record.

### 4. Futility: standing

The Pension Trust also urges me to find that amendment would be futile because Haigh lacks constitutional standing to bring his breach-of-fiduciary-duty claim against White.[23] Without challenging the injury-in-fact and causation aspects of standing, the Trust argues that it is not likely that Haigh's claim can be favorably redressed: "Even if Haigh could prevail on his proposed third claim for relief, and the Chairman were removed from the Board and required to pay 20 percent of whatever Haigh claims, it would inure to the Plan's benefit and not to Haigh."[24] The Trust also questions whether ERISA provides Haigh with a civil-enforcement cause of action against White.[25]

The Ninth Circuit routinely allows individuals to bring breach-of-fiduciary-duty claims in ERISA suits.[26] In this circuit, an employee "has standing to assert claims for breach of fiduciary duty

---

[22] *See* Doc. 33-1 at 3.

[23] Doc. 34 at 13–16.

[24] *Id.* at 14.

[25] *Id.* at 15.

[26] *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 733 (9th Cir. 2009) (quoting *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1030 (9th Cir. 2009)) ("former employees who have received a full distribution of their account balances under a defined contribution pension plan have standing as plan participants under ERISA to recover losses occasioned by a breach of fiduciary duty that allegedly reduced the amount of their benefits."); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000) (granting an ERISA plaintiff leave to amend because "amendment would allow [the plaintiff] to state a legally cognizable claim for breach of fiduciary duty" for mishandling an

under section 502(a)(2) of ERISA even if claims under [section] 502(a)(1)(B) are also available."[27] In short, even if the fiduciary is required to restore benefits to the plan under 502(a)(1)(B) (which is the Pension Trust's theory), the plaintiff can also sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under 501(a)(2) (which is Haigh's theory).

Haigh relies on the Supreme Court's decision in *Massachusetts Mutual Life Insurance v. Russell*, which acknowledges that "[t]here can be no disagreement with [the] conclusion that § 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409. [The petitioner in *Mutual Life*] contend[ed], however, that recovery for a violation of § 409 inures to the benefit of the plan as a whole."[28] Because § 502 neither expressly nor implicitly authorizes extracontractual damages, the Supreme Court agrees that "there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief."[29] Relief is available, however, under "the plan itself."[30]

---

arbitration clause).

ERISA itself recognizes that pension fiduciaries have a duty to act "solely in the interest of the participants and beneficiaries," and in ERISA breach-of-fiduciary-duty cases, federal courts have repeatedly allowed plaintiffs to argue that their pensions were not handled impartially. 29 U.S.C. § 1104(a)(1); *see also, e.g., Opeta*, 484 F.3d at 1217 (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)) (discussing "instances where the payor and the administrator are the same entity and the court is concerned about impartiality"); *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984) (recognizing that "a trustee has a duty to deal impartially with beneficiaries."); *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, 290 F.R.D. 452, 455–56 (D. Vt. 2013), *reconsideration denied* July 2, 2013 (discussing complaint that alleges violations of the "fiduciary duties of loyalty and impartiality").

[27] *Harris*, 573 F.3d at 736 (discussing employee who voluntarily withdrew assets from a defined-contribution ERISA plan, when the assets withdrawn were less than they would have been because of a breach of fiduciary duty). Section 502 of ERISA is codified at 29 U.S.C. § 1132.

[28] *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 140 (1985).

[29] *See id.* at 144, 148 ("Thus, the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims.").

[30] *Id.* at 144.

Haigh's proposed complaint does not seek compensatory or punitive damages.[31] While I do not address the merits of his requested relief at this time, his prayer for relief appears aimed at remedies available through ERISA itself. Accordingly, I find that amendment is not futile on the basis of standing because it appears at this time that Haigh satisfies the third constitutional-standing requirement.

### 5. Prejudice

The Pension Trust also objects to amendment because "Haigh has proceeded since September 2014 with specific claims" and the defendant has "repeatedly told Haigh's counsel" why evidence is limited to the administrative record.[32] Having relied on this status quo in opposing Haigh's discovery requests and seeking summary judgment, the Pension Trust now argues that it would experience "significant surprise and prejudice" if amendment was allowed.[33] Although ERISA suits are often limited to the administrative record, federal circuits including the Ninth recognize that supplementing the record "to enable the full exercise of informed and independent judgment" can be necessary, as it may be in this case.[34] Because the Trust warned Haigh about limiting evidence to the administrative record, it was, by its own admission, aware that Haigh sought further discovery. The fact that Haigh is now able to conduct that discovery does not create surprise or undue prejudice. This finding is further supported by Haigh's diligence in seeking amendment and the timeline of this case. While I caution Haigh that he cannot count on unlimited amendment, especially at this point in the suit, I do not find that prejudice prevents amendment now.

### 6. Summary

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this

---

[31] See Doc. 33-1 at 10–11.

[32] Doc. 34 at 11.

[33] Id.

[34] See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938, 943 (9th Cir. 1995) ("We agree with the Third, Fourth, Seventh, Eighth, and Eleventh Circuits that new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment.").

7

mandate is to be heeded."[35] For the reasons stated here, I grant Haigh leave to amend his complaint. Because the Pension Trust's summary-judgment motion attacks Haigh's original complaint, I deny the motion for summary judgment without prejudice to the Pension Trust's ability to reurge summary judgment based on the newly amended complaint.

### Conclusion

Accordingly, with good cause appearing,

It is hereby ORDERED that Steven Haigh's motion to amend **[Doc. 33] is GRANTED**. Haigh is instructed to file his first amended complaint in the format attached as Document 33-1 by July 6, 2015.

It is further ORDERED that the Construction Industry & Laborers Joint Pension Trust for Southern Nevada, Plan A & Plan B's motion for summary judgment **[Doc. 18] is DENIED** as moot and without prejudice.

DATED June 24, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[35] *Foman*, 371 U.S. at 182 (citing 3 Moore, Federal Practice (2d ed. 1948) 15.08, 15.10).

8