# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\*\*\*

STEVEN HAIGH, an individual,

               Plaintiff,

vs.

CONSTRUCTION INDUSTRY AND
LABORERS JOINT PENSION TRUST FOR
SOUTHERN NEVEAD, PLAN A AND PLAN B,
and THOMAS WHITE, an individual

               Defendants.

---

CONSTRUCTION INDUSTRY AND
LABORERS JOINT PENSION TRUST FOR
SOUTHERN NEVEAD, PLAN A AND PLAN B,

               Counterclaimant,

vs.

STEVEN HAIGH, an individual,

               Counterdefendant.

Case No. 2:14–cv–1545–JAD–VCF

**ORDER**

MOTION TO COMPEL (#69)

This matter involves Steven Haigh's civil action under the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1132(a)(1),(3),(d)(2). In his first amended complaint, Haigh alleges claims against Pension Trust and Thomas White related to the decision to suspend his pension. (First Am. Compl. (#39) at 6-8[1]). Before the court are Haigh's Motion to Compel (#69), Pension Trust's Response (#75), and Haigh's Reply (#76). For the reasons stated below, Haigh's Motion to Compel is

---

[1] Parenthetical citations refer to the court's docket.

granted in part and denied in part. Haigh's request for the costs and fees associated with bringing his motion is denied.

## I. BACKGROUND

Steven Haigh (Haigh) has alleged that his pension benefits were terminated in violation of the Employee Retirement Income Security Act (ERISA). In his first amended complaint, Haigh pled three claims: (1) Pension Trust allegedly abused its discretion when it suspended his pension benefits, (2) allegedly Pension Trust utterly failed to exercise discretion and wholly and flagrantly violated the terms of ERISA when it terminated his pension benefits, and (3) Trustee Thomas White breached his fiduciary duty under ERISA when he allegedly suspended Haigh's pension in retaliation for Haigh's performance of non-union work. (Doc. (#39) at 6-9). On August 6, 2015, this court entered a discovery scheduling order and ordered that discovery be completed by February 16, 2016. (Disc. Or. (#53)).

On August 31, 2015, Haigh served a subpoena on Pension Trust's third-party administrator, Wilson-McShane. (Pl.'s Mot. to Compel (#69-1) at 6). Haigh requested, among other items, emails that were sent or received by Wilson-McShane that mentioned Haigh's name. (*Id.* at 9). Wilson-McShane retained Pension Trust's counsel, the law firm Brownstein, Hyatt, Farber, and Schreck, LLP, to respond to Haigh's subpoena. (*Id.* at 20). Wilson-McShane disclosed some documents, but withheld others under the attorney-client privilege and work product doctrine. (*Id.* at 22-25).

After exchanging emails with Pension Trust regarding disputed emails on Pension Trust's privilege log, Haigh and Pension Trust were unable to reach an agreement regarding the disputed emails. (*Id.* at 27-47). Haigh then filed the instant motion to compel. Haigh's motion seeks the production of the following emails noted on Wilson-McShane's privilege log:

1.   Emails dated April 4, 2014 through April 8, 2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding Haigh's suspension letter. (Contested Emails #1).

2.      Emails with attachments dated 6/6/2014, between Wilson-McShane and its counsel, regarding Haigh's administrative appeal letter. (Contested Emails #2).

3.      Emails dated 6/6/2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding Haigh's administrative appeal letter. (Contested Emails #3).

4.      Emails dated 6/6/2014 through 6/10/2014, between Wilson-McShane and its counsel, regarding Haigh's administrative appeal letter. (Contested Emails #4).

5.      Emails dated 6/23/2014 through 6/25/2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding the suspension of Haigh's pension. (Contested Emails #5).

6.      Emails dated 7/10/2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding Haigh's suspension after appeal. (Contested Emails #6).

7.      Emails dated 7/10/2014, between Pension Trust, Wilson-McShane, and their shared counsel regarding Haigh's suspension after appeal and the status of Haigh's suspension. (Contested Emails #7).

8.      Emails dated 8/19/2014, between Pension Trust, Wilson-McShane, and their shared counsel regarding an information request from Haigh. (Contested Emails #8).

9.      Emails dated 4/19/2014 through 4/27/2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding an information request from Haigh and the status of the response.[2]  (Contested Emails #9).

10.     Emails dated 8/19/2014 through 9/4/2014, between Pension Trust, Wilson-McShane, and their shared counsel, regarding an information request from Haigh and the status of the response. (Contested Emails #10).

---

[2] In its response, Pension Trust notes that this entry on the privilege log was made in error and emails from this time range regarding Haigh's information request never existed. (Doc. (# 75) at 4 n.2).

3

11.     Emails dated 8/10/2015 through 8/17/2015, between Pension Trust, Wilson-McShane, their share counsel, and a third party, Ian Thienes of Local Union 872, regarding Haigh's Union membership. (Contested Emails #11).

(Doc. (#69) at 5-6).

Haigh also seeks to compel Deponent David Danley, a Wilson-McShane administrator, to answer questions regarding Pension Trust's co-counsel's legal opinions given to Pension Trust at the June 18, 2014 benefits termination meeting. (*Id.* at 2).

Haigh asserts that he is entitled to the contested emails and testimony because they fall within the "fiduciary exception" to the attorney-client privilege. Pension Trust responded that the contested emails and testimony are subject to the attorney-client privilege. (Def.'s Resp. to Pl.'s Mot. to Compel (#75)). Haigh replied to Pension Trust's response and asserted that, even under the authorities Pension Trust cited, the contested emails and testimony were not privileged. (Pl.'s Reply to Def.'s Resp. (#76)).

## II. LEGAL STANDARD

Rule 26 states that, "[p]arties may obtain discovery regarding any nonprivileged matter" if the information is both (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Information "relevant to any party's claim or defense," need not be admissible into evidence in order to be discoverable. *Id.* When determining whether discovery is "proportional to the needs of the case," the court examines the information requested in light of six factors: "[1] the importance of the issues at stake in action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

4

If a party resists discovery, the requesting party may file a motion to compel. *See* FED. R. CIV. P. 37(a)(1). A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). Second, the motion must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sander*, 437 U.S. 340, 352 (1978)).

If the requesting party makes these showings, the resisting party carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). If a party asserts that communications are subject to the attorney-client privilege, "[t]he burden of proving the privilege rests on the party asserting the privilege*." LightGuard Systems, Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597 (D. Nev. 2012) (citing *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002)). "Because the privilege impedes full and free discovery, it is strictly construed." *Id.* at 598 (citing *Weil v. Inv. Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

"The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: [1] the United States Constitution; [2] a federal statute; or [3] rules prescribed by the Supreme Court." FED. R. EVID. 501. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* In an action, such as this action, where the claims arise under a federal statute, federal common law governs the attorney-client privilege. *See id*; *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (stating "the federal common law of attorney-client privilege to this civil RICO action.").

"The attorney-client privilege protects confidential communications between attorney and client made for the purpose of giving or receiving legal advice." *LightGuard Systems*, 281 F.R.D. at 597. In the Ninth Circuit, an attorney-client privilege exists:

> (1) [W]here legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived.

*Id.* at 597–98.

"The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (specifying that communications with agents of an attorney are privileged if such communications are intended to assist the attorney in giving legal advice).

In an ERISA action, a "fiduciary exception" to the attorney-client privilege exists. *U.S. v. Mett*, 178 F.3d 1058, 1062–63 (9th Cir. 1999) (recognizing two rationales for the exception either (1) the attorney-client privilege must give way to the ERISA trust beneficiaries' need for information or (2) the ERISA trust's attorney's client is the trust beneficiaries, rather than the trustee).

The "fiduciary exception" states that an "ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *See id.* at 1063 (citing *Becher v. Long Is. Lighting Co.* (*In re Long Is. Lighting Co.*), 129 F.3d 268, 272 (2d Cir. 1997)). "On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries … the attorney-client privilege remains intact." *Id*. at 1064.

"Matters of plan administration" embrace communications between trust counsel and the trust regarding the interpretation of the terms of the pension plan. *Stephan v. Unum Ins. Co. of America*, 697 F.3d 917, 933 (9th Cir. 2012) (explaining that communications between in-house counsel and an analyst fell within "fiduciary exception" because they discussed whether to include a disabled employee's bonus payment in an initial benefits calculation, not whether a trustee would be exposed to personal liability for his actions). Legal opinions in advance of the initial decision to deny or terminate ERISA-protected benefits also fall within the "fiduciary exception." *See id*. at 932 (citing *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620, 625 (E.D. Mo. 2000)).

Once "the interests of the Plan fiduciary and beneficiary diverge" the "fiduciary exception" no longer applies and the ERISA plan fiduciary may reassert the attorney-client privilege against the plan beneficiary. *Unum*, 697 F.3d at 933. In the Ninth Circuit, "it is not until after the final determination— that is, after the final administrative appeal—that the interests of the Plan fiduciary and the beneficiary diverge for purposes of application of the fiduciary exception." *Id*. (citing *Klein v. Northwestern Mut. Life. Ins. Co.*, 806 F.Supp. 2d 1120, 1132) (agreeing with the most courts that a plan trustee's interests sufficiently diverge from a plan beneficiary's interest to allow the reassertion of the attorney-client privilege after a final administrative appeal).

 "[V]oluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject." *Weil*, 647 F.2d at 24 (collecting cases). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005).

"When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." FED R. EVID. 502(a).

### III. DISCUSSION

The parties' filings present four questions: (1) whether Haigh's Motion to Compel meets the threshold requirements for a motion to compel, (2) whether the "fiduciary exception" to the attorney-client privilege applies to the contested emails, (3) whether Deponent Danley may be compelled to answer questions regarding legal opinions given during the June 18, 2014 benefits termination meeting, and (4) whether Haigh is entitled to costs and fees associated with bringing the instant motion to compel.

**1.    Haigh's Motion to Compel Meets the Threshold Requirements**

Haigh's motion to compel seeks "emails [that mention Haigh's name] wrongly withheld on the basis of attorney-client privilege and/or work product doctrine" and "deposition testimony of statements and opinions made by Pension Trust (also Union) counsel at the 'star chamber' Board of Trustees meeting where Haigh's appeal was denied." (Doc. (#69) at 2). The parties agree that Haigh satisfied the meet and confer requirement. (Doc. (#69) at 3-5); (Doc. (#75) at 3-4).

Haigh's requests seek information within the scope of discovery under Rule 26. First, Haigh's requests seek information relevant to his claim for relief under ERISA. In his first amended complaint, Haigh's second claim for relief alleges that Pension Trust "utterly failed to exercise discretion" and committed "wholesale and flagrant" violations of ERISA. (Doc. (#39) at 7-8). Haigh goes on to list facts allegedly supporting his claim such as: (1) Pension Trust failed to specify what conduct caused Haigh to lose his pension, (2) Pension Trust failed to show any proof or produce any witnesses that Haigh

8

engaged in conduct prohibited by the pension, and (3) Pension Trust failed to maintain procedural safeguards that would have ensured Haigh's benefits termination proceedings complied with ERISA guidelines. (*Id.* at 8). The contested emails and testimony are relevant to Haigh's second claim for relief because Haigh's requests address Pension Trust's administrative procedure and the requested information could show Pension Trust's "wholesale and flagrant" disregard for ERISA safeguards.

Second, Haigh's requests are proportional to the needs of the case, in light of the six proportionality factors listed in Rule 26. Pension Trust has access to the contested emails and has shown it can readily produce them, indeed it has attached several of them to its response. Further, discovery relating to Pension Trust's handling of Haigh's pension suspension is central to Haigh's claim that Pension Trust's suspension of Haigh's pension was in "wholesale and flagrant" disregard for ERISA safeguards. Therefore, Haigh's motion to compel meets the threshold requirements.

**2.** **The "Fiduciary Exception" to the Attorney-Client Privilege Applies to Some of the Emails Described in Wilson-McShane's Privilege Log**

Haigh asserts that all the contested emails fall within the "fiduciary exception" to the attorney-client privilege. Pension Trust maintains that the communications Haigh seeks are protected by Pension Trust's attorney-client privilege. For the reasons discussed below, the court finds the following: (1) the "fiduciary exception" to the attorney-client privilege applies to Contested Emails #1, 3, and 4, (2) Wilson-McShane's counsel waived its attorney-client privilege as to Contested Emails #2, (3) Pension Trust's attorney-client privilege attaches to Contested Emails #5-10 and the privilege has been validly asserted, and (4) Pension Trust waived its attorney-client privilege as to Contested Emails #11.

*A. Contested Emails #1, 3, and 4*

Haigh asserts that the contested emails dated before June 18, 2014 fall within the "fiduciary exception" to the attorney-client privilege. In its response, Pension Trust attached Contested Emails #1-4

as its Exhibits #2-5. Pension Trust maintains that the emails are privileged, but acknowledges a limited waiver of the alleged attorney-client privilege with regard to the emails attached to its response. The court disagrees and finds that Contested Emails #1, 3, and 4 fall within the "fiduciary exception" to the attorney-client privilege. Even if an attorney-client privilege protected Contested Emails #1, 3, and 4, Pension Trust's voluntary disclosure of the emails in its response to Haigh's Motion to Compel constitutes a waiver of the privilege.

After reviewing the emails Contested Emails #1, 3, and 4, the court finds that these emails fall within the "fiduciary exception" to the attorney-client privilege. The emails discuss whether to terminate Haigh's pension benefits because he allegedly performed non-union work and how to proceed with Haigh's benefits termination. The emails do not inquire about any individual trustee's personal liability in the event Haigh's benefits are terminated. Thus, these emails fall within the provisions of *Unum* and are not subject to the attorney-client privilege because they fall within the "fiduciary exception."

As discussed above, voluntary wavier of the attorney-client privilege waives the privilege for all communications on that subject matter. *Weil*, 647 F.2d at 24 (collecting cases). Pension Trust acknowledges that its disclosure of the emails constituted a waiver of the attorney-client privilege. (Doc. (#75) at 3). A question remains as to the scope of Pension Trust's waiver. After reviewing the emails disclosed by Pension Trust, Pension Trust's counsel waived Pension Trust's attorney-client privilege, but only as to the subject matter of Haigh's administrative proceedings before to June 18, 2014.

### B. Contested Emails #2

Haigh contends that Contested Emails #2 fall into the "fiduciary exception." Pension Trust asserts that Contested Emails #2 is subject to the attorney-client privilege. On the facts provided, Contested Emails #2 is subject to the attorney-client privilege, but Wilson-McShane's counsel waived the privilege.

Contested Emails #2 are communications between only Wilson-McShane and its counsel, while Contested Emails #1, 3, and 4 also include Pension Trust. Thus Contested Emails #2 cannot fall within the "fiduciary exception" because Haigh has not shown that Wilson-McShane is a fiduciary of his pension trust under ERISA. Further, Contested Emails #2 was voluntarily disclosed with Pension Trust's response and Pension Trust's counsel acknowledged a limited waiver of the attorney-client privilege. As previously noted, Pension Trust and Wilson-McShane share counsel. Since Pension Trust's counsel is also Wilson-McShane's counsel, Wilson-McShane's counsel waived Wilson-McShane's attorney-client privilege because of the voluntary disclosure. The subject matter of the waiver is limited to Haigh's administrative proceedings before to June 18, 2014.

### C. Contested Emails #5-10

Haigh asserts that Contested Emails #5-10 are also subject to the "fiduciary exception." Haigh relies on pre-*Unum* authority to contend that the "fiduciary exception" may apply beyond the final administrative appeal because there may be communications after the final administrative appeal that relate to matter of plan administration. The court disagrees and finds that the attorney-client privilege attaches to Contested Emails #5-10.

Neither party disputes that Haigh's final administrative appeal occurred at the Trustees Board meeting on June 18, 2014. (Def.'s Resp. to Pl.'s Mot. to Compel (#75) at 4 n. 1); (Pl.'s Reply to Def.'s Resp. (#76) at 5-6). Under *Unum*, Haigh's and Pension Trust's interests sufficiently diverged to allow the reassertion of the attorney-client privilege at the conclusion of the June 18th meeting. Thus Pension Trust may reassert the attorney-client privilege for any contested emails dated after June 18, 2014. After reviewing Wilson-McShane's privilege log, the court is convinced that its assertions of the attorney-client privilege meet the Ninth Circuit standard articulated above and are thus valid. Pension Trust may withhold Contested Emails #5-10.

11

### D. Contested Emails #11

Haigh asserts that Pension Trust waived the attorney-client privilege as to Contested Emails #11. The court agrees and finds that Pension Trust waived the attorney-client privilege as to Contested Emails #11.

The voluntary disclosure of privileged communications to a third party constitutes a waiver of the attorney-client privilege as to the subject matter of the disclosure. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (disclosure of privileged communications to an outside auditor constituted waiver of attorney-client privilege as to the tax matters discussed in the disclosed communications).

Contested Emails #11 is between Pension Trust, Wilson-McShane, their shared counsel, and Ian Thienes of Local Union 872 regarding Haigh's union membership. Pension Trust has not shown that Mr. Thienes is an employee or agent of either Pension Trust or Wilson-McShane. Thus, Mr. Thienes is a third party to the instant action. Mr. Thienes's inclusion in Contested Emails #11 constitutes a voluntary disclosure to a third party. Thus, Pension Trust has waived the attorney-client privilege on the subject matter of Haigh's union membership.

**3.** **<u>Deponent Danley Must Answer Haigh's Questions Regarding the June 18th Meeting</u>**

Haigh argues that Deponent Danley should be ordered to answer Haigh's questions regarding legal advice and opinions given during the June 18th meeting. Pension Trust maintains that communications during the June 18th meeting are subject to the attorney-client privilege. The court disagrees with Pension Trust and finds that the communications falls within the "fiduciary exception" to the attorney client privilege.

As discussed above, communications between the Pension Trust and its counsel prior to the final administrative appeal fall within the "fiduciary exception" to the attorney-client privilege. *Unum*, 697

F.3d at 933. The minutes from the June 18th meeting show that the final administrative determination on Haigh's benefits was decided at the end of the June 18th meeting. (Doc. (#75-1) at 2-4). Barry Hinkle, Pension Trust's co-counsel, provided legal advice and opinions before the final administrative determination was made. (*Id.*) Counsel Hinkle's opinions during the June 18th meeting fall within the "fiduciary exception" to the attorney-client privilege because they were given before the end of the meeting and before the final administrative determination of Haigh's claim. The court orders Deponent Danley to answer Haigh's questions about Counsel Hinkle's opinions during the meeting.

**4.** **Pension Trust is Not Entitled to Attorney's Fee and Costs Associated With Bringing the Instant Motion to Compel**

"If the motion [to compel discovery] is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C). In summation, the court grants Haigh's motion as to certain contested emails, denies Haigh's motion as to other contested emails, and grants Haigh's motion as to Deponent Danley's deposition testimony. Thus, Haigh's motion falls within the purview of Rule 37(a)(5)(C). After reviewing the parties' moving papers, the court denies Haigh's request for costs and fees associated with bringing the instant motion.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Haigh's Motion to Compel (#69) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Haigh's Motion to Compel is GRANTED with regard to Contested Emails #1, 2, 3, 4, and 11.

IT IS FURTHER ORDERED that Haigh's Motion to Compel is GRANTED with regard to Deponent Danley's oral deposition testimony.

IT IS FURTHER ORDERED that Haigh's Motion to Compel is DENIED with regard to Contested Emails #5-10.

IT IS FURTHER ORDERED that Haigh's request for costs and fees associated with bringing the instant motion is DENIED.

IT IS SO ORDERED.

DATED this 9th day of December, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

14